THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRANCE JOHNSON, Defendant-Appellant.

First District (5th Division)   No. 1—92—0251

Opinion filed September 3, 1993.—Modified on denial of
rehearing December 3, 1993.

Rita A. Fry, Public Defender, of Chicago (Alison Edward, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Michele I. Lavin, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

After a jury trial, defendant Terrance Johnson (Johnson) was found guilty of murder and armed robbery in connection with the March 22, 1989, shooting death of Cleotha Adams. Defendant was sentenced to 60 years' imprisonment on the murder conviction and 20 years' imprisonment on the armed robbery conviction, sentences to run consecutively. He now appeals his convictions, claiming that he was denied a fair trial based upon the improper admission of a juvenile accomplice's testimony and several other alleged trial errors. For reasons that follow, we affirm.

In the early morning hours of March 22, 1989, 59-year-old Cleotha Adams (Adams) was shot while working at the Unocal Gas Station located at 8510 S. Ashland Avenue in Chicago. Adams died as a result of a single gunshot wound to his back, and the bullet recovered from his body showed that a .25-caliber weapon was used. Johnson, Lester Boston (Boston) and Demetrius Broadwater (Broadwater) were all charged with murder and armed robbery in connection with Adams' death. On March 11, 1991, the simultaneous but severed trials of Johnson, Boston and Broadwater commenced. Johnson's trial was before a jury while codefendants Boston and Broadwater were tried by the bench.

Evidence adduced at trial established that Adams' co-worker, Darryl Williams, had been present at the gas station at the time of the shooting, although he did not witness the incident. Williams testified that he had been dozing in the office when Adams left the gas station at about 3 a.m. to take a bike to the bicycle shop he owned across the street. Shortly thereafter, Adams ran to the office door and, before falling to the ground, said, "Darryl, call the police, I've been shot." Williams called 911 and pushed the "panic button" for the police. Within minutes the police and an ambulance arrived.

Officer Good of the Chicago police department was one of the first officers to respond to the police report of a man shot at the Unocal gas station. He testified that when he arrived at the gas station he found Adams lying unconscious on the ground near the office door with Williams at his side. Officer Good also observed that a blue garbage can had been overturned near the gas pumps, a red cap (which was identified as belonging to Adams) was lying near the overturned garbage can and coins were scattered on the ground at that location and where Adams had fallen.

The next witness to testify was 19-year-old Tremmel Broadwater (Tremmel). Tremmel was codefendant Demetrius Broadwater's nephew, although he was only a couple of years younger than Demetrius and they resided together in the same household all their lives. Additionally, Tremmel was friends with the other two defendants, stating that he had known Johnson since he was 11.

When Tremmel took the stand at trial, he testified that on April 14, 1989, four police detectives came to his home at 9035 S. Racine in Chicago, looking for Demetrius. He gave the officers an address where Demetrius could be found and was then arrested on outstanding warrants for burglary and theft. One of the officers searched the room he was in and found a sawed-off shotgun, which they confiscated. He was then taken to Area 2 headquarters, where he was placed in a small interview room and asked questions regarding the gas station shooting.

The prosecutor then asked Tremmel whether he had been in a car with the three defendants on the night of March 22, 1989, and witnessed the armed robbery and shooting at the Unocal gas station. Tremmel, however, denied any knowledge of or involvement in the gas station incident. Upon further questioning he admitted that he had signed a written statement and had testified before a grand jury indicating that he had been present at the gas station shooting. Now, however, he recanted his earlier statement and testimony.

The prosecutor impeached Tremmel with his earlier written statement and grand jury testimony, wherein Tremmel had stated that in the early morning hours of March 22, 1989, he rode with Johnson, Broadwater and Boston in a brown or tan car, witnessed Johnson rob a gas station on South Ashland in Chicago, and saw Johnson shoot a man in the back with a .25-caliber semiautomatic handgun. Throughout the impeachment, Tremmel admitted that the written statement he signed and the testimony he gave before the grand jury were consistent with the information being quoted by the prosecutor. He claimed, however, that he had been coerced by the police into signing the statement and testifying before the grand jury and that he had no personal knowledge regarding the shooting.

According to Tremmel, the coercion consisted of threats made by the police to arrest him for murder or for the Federal offense of possession of a sawed-off shotgun if he didn't cooperate. He claimed that the police composed the written statement and obtained his signature on it by promising not to charge him with murder or other crimes and by promising to help him out on his other outstanding warrants. He testified that he signed the statement and testified falsely before the grand jury for this reason. Tremmel further testified that to insure his grand jury testimony he was kept at the police station against his will from Friday afternoon until Monday morning, when he was transported by police to testify before the grand jury.

Tremmel admitted that he never attempted to contact anyone to inform them that his written statement and grand jury testimony were untrue, with one exception. He claimed that in December 1990, when he was served a subpoena by an assistant State's Attorney at the Markham courthouse, he told the assistant State's Attorney that his grand jury testimony was not true, but when he did so, this assistant State's Attorney threatened to charge him with murder if he changed his testimony. Then, on February 5, 1991, when Tremmel was interviewed by counsel for defendant Johnson in preparation for the March 11, 1991, trial, Tremmel told the defense counsel that his previous statement and grand jury testimony were the result of police coercion. At that time he signed a new statement recanting his earlier testimony and claiming that he had no knowledge of whether any of the defendants were involved in the gas station incident.

Because Tremmel's trial testimony was inconsistent with his prior written statement and grand jury testimony, and because there was no

other direct evidence linking Johnson to the shooting,[1] the State made a motion to have Tremmel's prior written statement and grand jury testimony admitted as substantive evidence pursuant to the exception to the hearsay rule provided by section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10.1). To this end, Chicago police detectives Frank Glynn, Barry Costello, and Michael McDermott testified. These witnesses gave a detailed accounting of the events of April 14 and 15, 1989, which led up to the arrests of Johnson and codefendants Boston and Broadwater.

These police officers agreed that Tremmel was taken into custody on April 14, 1989, and that he remained at the police station until he testified before the grand jury on April 17, 1989. Yet, all of the officers testified that Tremmel was never placed under arrest, that Tremmel was never threatened with arrest or made promises of any kind in return for his cooperation, and that Tremmel voluntarily agreed to assist the police.

Detective Glynn testified that after Tremmel gave a signed written statement to Assistant State's Attorney Wasik he was asked to testify before the grand jury and he agreed to do so. Admittedly, Tremmel remained at the police station until he testified before the grand jury on April 17, 1989, but Glynn testified that Tremmel stayed at his own request and was not kept against his will. Furthermore, Glynn indicated that during his stay at the station Tremmel was given the freedom to roam between several rooms at the station and was given food to eat, and that he had access to a telephone and made numerous calls to his residence and mother. He also indicated that Tremmel obtained a change of clothes from his mother while at the police station.

Following the officers' testimony, Assistant State's Attorney Wasik was called to testify regarding the conditions under which he obtained Tremmel Broadwater's written statement at the police station on April 14, 1989. Wasik indicated that Tremmel was cooperative and that he witnessed no threats being made to Tremmel. Wasik further testified that Tremmel's three-page written statement was prepared from responses Tremmel gave to him during questioning.

---

[1]Although the record does not contain transcripts of the proceedings held outside the presence of the jury, it appears that codefendants Boston and Broadwater made post-arrest statements to the police in which they implicated themselves in the gas station robbery-shooting. Johnson, however, gave no post-arrest statement to the police implicating himself in the crime.

Wasik also testified that in the early morning hours of April 15, 1989, Tremmel was asked if he would be willing to testify before the grand jury. When Tremmel readily agreed to testify, a discussion was held with the police regarding transportation to the grand jury on Monday. Tremmel then said that he did not want to go home and it was agreed that he could stay at the police station until Monday.

After Wasik's testimony and after argument outside the presence of the jury, the court determined that Tremmel's written statement met the requirements of section 115—10.1 of the Code of Criminal Procedure and could be published as substantive evidence. Wasik then read the written statement into evidence.

In the written statement Tremmel had indicated that on the night in question he got into a tan or brown car with Johnson, Boston and Broadwater. They drove to a dope house called "Unk's," which they intended to rob, but no one was there. After that they drove around until Johnson directed the driver to pull into a gas station on Ashland. At this station Johnson jumped out and demanded money from the attendant. The attendant ran and Johnson shot him in the back. Johnson then went through the victim's pockets, extracting some money.

Assistant State's Attorney Cassidy was called to impeach Tremmel's trial testimony regarding threats made in December 1990. Cassidy testified that he delivered a subpoena to Tremmel on December 7, 1990, in the Markham courthouse but that he never threatened Tremmel or had any conversation with him concerning his testimony in this case.

Assistant State's Attorney Robert Buckley, who had conducted Tremmel's questioning before the grand jury on April 17, 1989, was also called to testify. After his testimony concerning the conditions under which Tremmel's grand jury testimony was secured, he was allowed to publish the transcript of Tremmel's grand jury testimony to the jury. This testimony related the same events that were recounted in the written statement, although some details were added.

In addition to presenting Tremmel's prior inconsistent statements, the State presented circumstantial evidence tending to show that Johnson had the opportunity to commit the crime. This was done by showing Johnson's proximity to the location of the gas station through evidence of his participation in another similar crime earlier that evening.

The State produced witnesses who established that a robbery took place at about 2:30 a.m. on March 22, 1989, at the Concord Oil gas station located at 440 W. 87th Street in Chicago, which is about two

miles from the Unocal gas station on Ashland. The witnesses testified that a brown or tan-colored Bonneville automobile containing three or four persons pulled into the gas station. The man in the front passenger seat was Johnson and the driver was Lester Boston. According to the testimony, Johnson jumped out of the car carrying a semiautomatic handgun and told an attendant to turn over his money to the driver. Johnson then ran to the gas station office and kicked in the door. Johnson demanded more money from the office attendant and then ran from the scene, exchanging gunshots with the gas station's security officer. Johnson was able to get back into the car and the car took off.

After this evidence was presented, the State rested. In his defense Johnson presented one witness, Chicago police officer Anthony Mayo, who testified that he had spoken with witnesses in the course of his investigation of the robbery that occurred at the gas station at 440 W. 87th Street on March 22, 1989. According to Officer Mayo's testimony, there were some discrepancies between the descriptions he was given by these witnesses of the man with the gun and the driver of the car and the actual features of the defendants.

After this one witness Johnson rested. The jury was instructed and, after deliberations, it found Johnson guilty of armed robbery and murder. Johnson moved for judgment notwithstanding the verdict, but the trial court denied the motion.

Although the trial court found Johnson eligible for the death penalty, the court sentenced him on June 13, 1991, to consecutive sentences of 60 years and 20 years, respectively, for the murder and armed robbery convictions.

OPINION

The first issue raised by defendant is whether he was denied due process and a fair trial by the admission of Tremmel Broadwater's prior inconsistent written statement and grand jury testimony as substantive evidence. Johnson argues that, despite the fact that the written statement and grand jury testimony met the requirements of section 115—10.1 of the Code of Criminal Procedure (Code), they were erroneously admitted into evidence because, having been coerced, their use violated Johnson's due process rights.

In his original appeal brief Johnson cited to *People v. Kidd* (1992), 147 Ill. 2d 510, 591 N.E.2d 431, in support of his contention that the trial court must make a threshold determination regarding the reliability and trustworthiness of statements before allowing them to be admitted. We find the case of *People v. Kidd* clearly distinguishable.

In *Kidd*, the trial court allowed a witness to testify to statements allegedly made by the defendant while he was asleep and dreaming. The trial court did not indicate whether it believed that the statements were made while defendant was asleep or awake. Rather, the court admitted the evidence, finding that "dream statements" were not inherently untrustworthy and that the jury could assess their credibility. On appeal, our supreme court ruled on this first impression issue, holding that "dream statements" are inherently unreliable. It then ruled that if the statements were made while defendant was asleep, they were too untrustworthy to be admitted into evidence for the jury to consider. The case was then remanded to the lower court for a determination of whether the statements were made while defendant was awake or asleep.

First of all, the *Kidd* case is distinguishable because it does not involve the admission of prior inconsistent statements as substantive evidence pursuant to section 115—10.1 of the Code. The statements that the State sought to admit in *Kidd* did not meet any of the mandates of section 115—10.1, *i.e.*, the maker of the statement (the defendant in that case) was not subject to cross-examination and, even if he were subject to cross-examination, due to the circumstances under which the statements were made he could never explain the rationale for having made the dream statements. Furthermore, the defendant's prior statement was neither written nor testified to under oath. Therefore, the "dream statements" in *Kidd* had none of the safeguards of reliability that are present in this case or any case wherein the statements are admitted pursuant to section 115—10.1 of the Code of Criminal Procedure.

In his petition for rehearing, however, Johnson cites, for the first time, the case of *Vogel v. Percy* (1982), 691 F.2d 843, in support of the contention that his due process rights were violated by the admission of Tremmel's prior statements as substantive evidence. Although this case has raised new issues for this court to consider, we again conclude that Johnson's constitutionally guaranteed rights were not denied and that reversal of Johnson's convictions is not required.

There is no question, as the State maintains, that Illinois statutory law permits prior inconsistent statements of a witness to be admitted as substantive evidence. Section 115—10.1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1991, ch. 38, par. 115—10.1) sets forth the conditions under which this may be accomplished. This statute provides as follows:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness has personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledges under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence is being sought, or at a trial, hearing or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." Ill. Rev. Stat. 1991, ch. 38, par. 115—10.1.

Johnson concedes that Tremmel's statement and grand jury testimony fall within the formal requirements of section 115—10.1 of the Code. However, Johnson argues that to satisfy due process concerns, beyond meeting all of the dictates of this statute, there must be an additional determination made by the court that the prior inconsistent statements are reasonably reliable and trustworthy before they may be deemed admissible for the jury to consider. He contends that coerced statements are inherently unreliable and, therefore, the prior inconsistent statements should not have been admitted.

This is apparently a question of first impression for this court. In cases involving the admission of prior inconsistent statements pursuant to section 115—10.1, no court has ever found that there must be a threshold finding of reliability by the trial court in addition to a finding that the statutory criteria have been fulfilled. In *People v. Redd* (1990), 135 Ill. 2d 252, 553 N.E.2d 316, although the court found that the witness' prior out-of-court statement should not have been admitted at trial as substantive evidence, that holding was based upon the court's determination that the witness' in-court assertion of his fifth amendment privilege could not be considered "inconsistent" for pur-

poses of this statute, nor was the witness subject to cross-examination.

In *People v. McBounds* (1989), 182 Ill. App. 3d 1002, 536 N.E.2d 1225, a case which is factually similar to the case at bar, two witnesses had given the police written statements implicating the defendant. One of these witnesses also corroborated his written statement by testifying before a grand jury. These section 115—10.1 out-of-court statements were admitted as substantive evidence despite the fact that at trial the witnesses testified that their statements had been coerced and that the police told them what to say. Because it was a bench trial, the trial court, as trier of fact, found the prior statements more credible and convicted the defendant based upon the witnesses' prior testimony.

On appeal, the defendant initially challenged the constitutionality of section 115—10.1 of the Code on the basis that it was a legislative encroachment on the rulemaking power of the judiciary. The *McBounds* court rejected this claim, holding that it is within the legislature's power and authority to prescribe methods of proof and alter existing rules of evidence. Defendant also challenged the admission of the prior inconsistent statements on the basis that they were involuntarily made and the product of coercion and violence. This, he claimed, violated his constitutional rights under the confrontation clause. The reviewing court found, however, that the trial court's finding that the prior inconsistent statements were voluntary and uncoerced was not so unreasonable that reversal was required. Because it was a bench trial, however, it is unclear whether the voluntariness determination was made as a prerequisite to considering the prior statement or whether such a determination was for the trial court to decide as trier of fact.

Another recent case, *People v. Parker* (1992), 234 Ill. App. 3d 273, 600 N.E.2d 529, is also factually similar to the present case. In *Parker*, however, the reviewing court found that there was insufficient evidence to sustain defendant's convictions where the sole evidence of defendant's guilt was the recanted prior statements of three witnesses. In *Parker*, however, the witnesses did not merely deny making the earlier statements; they exculpated defendant with their trial testimony. Furthermore, there was absolutely no other evidence linking defendant to the crime. Thus, the reviewing court found that the prior statements, which contained internal inconsistencies and discrepancies, were not more credible than the witnesses' trial testimony, and that no reasonable jury could have found defendant guilty beyond a reasonable doubt based solely upon the recanted testimony.

It is important to note that even though the reviewing court in *Parker* found that the prior out-of-court statements were "severely impeached" by the witnesses' trial testimony, the court did not find that the prior statements were improperly admitted as substantive evidence pursuant to section 115—10.1 of the Code. Rather, the reviewing court found that the recanted testimony was insufficient to support conviction.

None of the above cases discuss the due process claim raised by Johnson here. However, in Federal law there appears to be some support for Johnson's claim that beyond meeting the statutory requirements for admission, an additional inquiry must be made to show that the admission of a prior inconsistent statement satisfies constitutional due process requirements.

In *United States ex rel. White v. Lane* (1992), 785 F. Supp. 768, the District Court for the Northern District of Illinois, Eastern Division, considered that a witness' prior inconsistent statement, although properly admitted as substantive evidence in compliance with Illinois statutory law, might not be admissible as substantive evidence under constitutional due process standards. The *White* court held that substantive use of a prior inconsistent statement will satisfy constitutional due process requirements if a sufficiently reliable basis for admitting the evidence is established. Guidelines for determining whether a sufficient basis exists were set forth in *United States v. Leslie* (1976), 542 F.2d 285, and adopted in *Vogel v. Percy* (1982), 691 F.2d 843. According to these cases, a sufficient basis for admitting a prior inconsistent statement in accordance with constitutional due process mandates will be found if the evidence shows that: (1) the declarant is available for cross-examination; (2) the statement was made shortly after the events being related and the statement was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admits making the statement; and (5) there is some corroboration of the statement's reliability.

In the present case defendant does not question the fact that guidelines (1), (2), (4) and (5) were met. He claims, however, that because Tremmel testified at trial that the prior statements were the product of coercion, there was no showing that the prior statements were knowingly and voluntarily made and, for that reason, they were admitted in violation of his due process rights.

We do not agree that a declarant's claim of coercion automatically disqualifies a prior inconsistent statement from being admitted and considered by the triers of fact. To so hold would allow any witness to

defeat the constitutionality of admitting a prior statement by making a claim of coercion. However, the dilemma here is in deciding who determines whether the statements were the product of coercion, *i.e.,* whether this is a question of law or fact or some hybrid of the two.

■ After a careful review of the Federal cases cited above this court has reached the conclusion that the issue is a mixed issue of law and fact. That is to say, before a prior inconsistent statement is admissible for constitutional purposes, the trial court must make a finding that there is sufficient evidentiary basis from which a jury could find that the declarant's prior statements were knowing and voluntary. The resolution of that question, however, is an issue of fact for the jury to determine.

In this case, as is often the case when a prior inconsistent statement is being offered as substantive evidence at trial, the declarant (Tremmel) denied making the statement from his own personal knowledge and claimed that he was forced to sign a statement about which he knew nothing. At trial he claimed that the statement he signed was composed by the police and that he signed it under threat of being charged with murder and other crimes. With regard to his grand jury testimony, Tremmel never adequately explained how he was able to testify without any personal knowledge of the crime. He maintained, nonetheless, that he knew nothing about the crime and was kept at the police station against his will to testify before the grand jury, as the police demanded, under threat of being personally charged with murder.

■ The State on the other hand, presented evidence that Tremmel voluntarily provided information to Assistant State's Attorney Wasik from which a statement was prepared and then signed by Tremmel. The State also provided evidence that Tremmel voluntarily testified, under oath, before a grand jury. We believe this evidence provided a sufficiently reliable basis for the admission of the prior statements and that it was for the jury to decide whether Tremmel's trial testimony of coercion was more credible.

We realize, as defendant points out, that the trial judge in this case made comments indicating that he believed that Tremmel's prior written statement and grand jury testimony were obtained by coercion. Furthermore, at Johnson's request, this court has taken judicial notice of the statements made by the trial judge when he ruled in the bench trial of Lester Boston (whose bench trial occurred concurrently with Johnson's jury trial), which show more clearly the trial court's interpretation of Tremmel Broadwater's testimony. The transcript in Boston's case makes it clear that the trial judge found that the credi-

bility of Tremmel as a witness was undermined. The trial court judge, when ruling in Lester Boston's bench trial, found that Tremmel was not a credible witness because (1) Tremmel was an accomplice and, thus, his testimony had to be viewed with suspicion, (2) Tremmel had been given promises of leniency, reward or benefit and, thus, his statements were the product of coercion, and (3) Tremmel was a convicted felon whose testimony had to be viewed with suspicion. The trial judge further stated that the unmistakable and unavoidable inference to be drawn from all the evidence was that, had Tremmel refused to give a statement or testify before the grand jury, Tremmel would have been a defendant in this case. Finally, the trial judge stated that Tremmel's testimony was "of no value whatsoever" unless it was corroborated in its material aspects.

It is important to note, however, that the trial judge, when ruling on the admissibility of the prior statements, stated that there was evidence from which triers of fact could find that the statements were not coerced, but that he believed them to be coerced in that there was a *quid pro quo* or promise of leniency given in exchange for Tremmel's cooperation. The court did not exclude Tremmel's testimony from substantive evidence. Rather, in Boston's trial, the judge chose to disregard it and chose not to rely on Tremmel's testimony to form the basis for Lester Boston's conviction. The trial judge then went on to determine that there was sufficient evidence, without Tremmel's testimony, to support conviction for Lester Boston. The trial court was very clear, however, that its consideration of Tremmel's evidence was in its capacity as the trier of fact and that the weight that it gave Tremmel's testimony was a determination of fact, not of law.

■ Despite the trial judge's rejection of Tremmel's prior testimony in Boston's case, we find no basis for overturning the jury's determination that Tremmel's recanted section 115—10.1 statements were more credible than his trial testimony. Rather than believe Tremmel, the jury could easily have chosen to believe the three police officers and three assistant State's Attorneys who testified at trial that no promises or threats were made and that Tremmel voluntarily gave his statement and grand jury testimony. Furthermore, Tremmel's earlier testimony was not fraught with internal inconsistencies and discrepancies, but rather, was corroborated to a large extent by other circumstantial evidence admitted against Johnson.

For the above reasons, we find that Tremmel's prior statements were properly admitted under Illinois statutory law as well as in compliance with constitutional mandates. We believe that our interpretation of the Federal constitutional due process guidelines is consistent

with *Vogel*. In *Vogel* the declarant claimed that he was too drunk to remember giving a statement to the police and never admitted making the prior statement at trial. The court, stating that the satisfaction of the fourth *Leslie* factor was "problematic," went on to find that the element was satisfied by "the jury's implicit finding that the prior inconsistent statement was indeed made by [declarant]." (*Vogel*, 691 F.2d at 847.) Thus, the *Vogel* court made the declarant's credibility an issue of fact for the jury to determine.

Having determined that Tremmel's prior statements were admissible as substantive evidence, we must now consider whether Johnson was denied a fair trial in light of other evidentiary errors which Johnson alleges to have occurred during trial.

A number of these alleged errors, once again, involve Tremmel's statements. Beyond Johnson's claim that it was error to have admitted Tremmel's prior statements as substantive evidence (the issue we resolved above), Johnson contends that he was denied a fair trial due to the fact that: (1) questions posed to Tremmel by the prosecutor inferred or implied that Johnson owned a Colt handgun, which could have been the murder weapon; (2) Tremmel's grand jury testimony contained statements that Johnson stole the car in which the defendants rode during the commission of the crime; and (3) Tremmel's written statement and grand jury testimony, in addition to implicating Johnson in the crimes for which he was charged, implicated him in a conspiracy to commit a robbery at a drug house called "Unk's."

The issue here is not whether Johnson was prejudiced by the prosecutor's impeachment of Tremmel or the admission of evidence of other bad acts attributed to Johnson. Obviously, whenever the prosecutor is able to cast defendant in a bad light or impugn his character, it is prejudicial to defendant's position. The question is whether defendant was unfairly prejudiced. If the prosecutor had a legitimate purpose for placing evidence before the jury and if defendant fails to object to the admission of such evidence, defendant cannot claim unfair prejudice from its admission.

In this case the prosecutor asked Tremmel at trial whether he had previously told police that he knew Johnson owned and carried a Colt handgun. When Tremmel denied the statement, the prosecutor attempted to impeach him through the testimony of one of the police officers. Defense counsel objected and the trial court disallowed this testimony on the basis that it was hearsay. Thus, the State made a legitimate attempt to show that Johnson had access to a gun of the type consistent with the gun used in the commission of the crime. Defendant's objection prevented them from doing so.

562

■ Although the prosecutor's questions to Tremmel raised some inference that Tremmel had linked Johnson to a gun which could have been used in the commission of the crimes charged, these were legitimate questions, to which defense counsel did not object. Therefore, Johnson was not unfairly prejudiced. The single case cited to by defendant, *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353, is clearly distinguishable since in that case the prosecutor made repeated insinuations of wrongdoing against the defendant which the prosecutor never even attempted to substantiate. Furthermore, when it became apparent that the prosecutor would not be presenting rebuttal testimony to substantiate the numerous insinuations, defendant moved for a mistrial, thereby preserving the issue for review.

Additionally, in this case, Tremmel's prior inconsistent statements, which we found to be admissible as substantive evidence, clearly established that on the morning in question Johnson had in his possession a gun with which he shot the victim. Whether Johnson owned and carried a Colt gun was a collateral matter. Any prejudice that may have accrued from the State's reference to Johnson's alleged possession of a Colt weapon was negligible in light of the evidence entered against him and the fact that the murder weapon was never recovered so that the State was not able to show that the murder weapon was a Colt handgun. Furthermore, the defense was able to show that the bullet that was recovered from the victim could have been fired by any number of guns having the specified markings. Thus, any possible error arising from the prosecutor's references to a Colt gun was harmless beyond a reasonable doubt.

With respect to the admission of the other "bad acts" evidence, we tend to agree that the probative value of Tremmel's uncorroborated statements that Johnson stole the automobile used in the crimes and that he planned to rob "Unk's" earlier that night was outweighed by their prejudicial effect. As stated in *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, evidence of collateral crimes tends to overpersuade a jury to convict based upon a feeling that defendant is a "bad person" deserving of punishment. Therefore, in general, this evidence should be avoided unless it is relevant to show knowledge, intent, motive, design, plan, or identification.

However, references to the these collateral crimes were part of the continuing narrative of Tremmel's prior inconsistent statements and grand jury testimony, which this court already held were admissible as substantive evidence. This means that the entire contents of the prior inconsistent statements were admissible, unless Johnson requested that portions of the statements, which were not directly rele-

vant to the case, be excised. It does not appear that Johnson ever sought to exclude these references to other crimes; therefore, this matter is waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Next, Johnson argues that the trial court erred in refusing to grant his motion *in limine* to exclude evidence of the earlier, unrelated gas station robbery. Johnson argues that it was error to have allowed the prosecutor to admit detailed evidence of the other gas station robbery which occurred on the night in question.

As stated above, evidence of collateral crimes is admissible as long as it is not being admitted merely to show the defendant's propensity to commit crimes. (*People v. Stewart* (1984), 105 Ill. 2d 22, 60, 473 N.E.2d 840; *Lindgren*, 79 Ill. 2d at 137.) Where the evidence is relevant to demonstrate *modus operandi*, knowledge, intent, motive, design, identification, absence of mistake, or any other material matter other than the propensity to commit crime, it will be admissible. (*Stewart*, 105 Ill. 2d at 62; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821; *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) Furthermore, evidence is "relevant" if it has the tendency to make the existence of any material fact more or less probable than it would be without the evidence. *Stewart*, 105 Ill. 2d at 54.

In the present case the only substantive evidence of Johnson's guilt came from Tremmel's recanted written statement and grand jury testimony. There were no other eyewitnesses. However, evidence of the collateral crime corroborated Tremmel's recanted testimony and established, circumstantially, Johnson's link to the crimes charged.

The testimony concerning the other gas station robbery established that approximately one-half hour before the robbery-murder for which Johnson was being tried, he participated in a robbery of another gas station, which was located within two miles of the gas station, that Johnson was a passenger in a car similar in color and design to the one Tremmel testified was used in the present crime, and that Johnson carried and fired a gun in the course of that robbery. This evidence was certainly relevant for a number of reasons.

In light of the evidence established through Tremmel's prior statements, the evidence of Johnson's participation in the collateral crime tended to show a common design between the two crimes and tended to establish Johnson's identity and intent. For these reasons, there is no doubt in this court's mind that the evidence of the other crime was admissible.

Furthermore, while there is no doubt that the other crimes evidence tended to bolster the credibility of Tremmel's recanted statements, that was not the only purpose for its admission. Therefore, the decision of *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288, is not applicable.

In *Romero*, two defendants were being tried for burglary and theft for stealing a color television from a Murphysboro home. The State's witness, Reynolds, testified that around midnight on October 27, 1972, he heard defendants come home, in possession of a television set, and he overheard them say that they had taken it from a nearby residence. Reynolds then further testified that on the following morning he accompanied defendants to Pinckneyville and learned during the trip that defendants planned to rob a gun store there. Reynolds left the defendants and notified a State trooper of the defendants' intent to commit a robbery, as well as the previous night's burglary. Further testimony was elicited which established that defendants were apprehended in the parking area of the gun shop and were arrested for possession of burglary tools.

On review the State admitted that the subsequent attempted burglary was not so similar to the crime charged that it could be used to establish a common design or intent. Therefore, the State proposed that evidence concerning the subsequent burglary attempt was admissible to bolster Reynold's credibility concerning his testimony regarding the crime charged. The supreme court rejected this proposed use of other crimes evidence and reversed the convictions.

In this case the State did not seek to admit evidence of the Concord Oil gas station robbery to bolster the credibility of the testifying witness. The evidence was admitted to corroborate evidence obtained via Tremmel's prior inconsistent statements and to show intent, common design and identity. Admitting evidence to bolster credibility is not the same as admitting evidence to corroborate substantive evidence already admitted. Furthermore, the other crimes evidence in this case was similar in time, location and manner of performance to be relevant to show common design, intent and identity, as stated above. Thus, the *Romero* case is not applicable.

Next, without citing to a single authority, Johnson contends that he was denied a fair trial due to evidentiary errors resulting from the fact that he was tried with his codefendants in a simultaneous, though severed, proceeding. Johnson can point to only two instances wherein he was allegedly disadvantaged by the simultaneous trial: (1) when Detective McDermott testified that Lester Boston fled to avoid arrest, and (2) when a witness to the Concord Oil gas station robbery was al-

lowed to testify that he identified Boston as the driver of the automobile used in that robbery. Johnson contends that the jury could have inferred Boston's guilt from the evidence of his flight from arrest and that he was prejudiced by being continuously associated with Boston.

■ First of all, this issue may be deemed waived due to defendant's failure to specifically object to the admission of the evidence at trial or to delineate the admission of this evidence as error in his posttrial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Nevertheless, we find that this evidence was not improperly admitted and would, most likely, have been admissible even if the trials had been separate. The brief reference to Boston's flight from arrest was part of the police detective's continuous narrative showing his investigatory procedures. (See *People v. Moman* (1990), 201 Ill. App. 3d 293, 558 N.E.2d 1231.) We note, too, that any inference that the jury may have drawn from Boston's flight would more than likely have been negated by the fact that Johnson was able to establish that not only did he not flee from police, he even met them on the street in front of his residence upon learning that the police were looking for him.

Furthermore, evidence linking both Johnson and Boston to the Concord Oil gas station robbery was also properly admitted, to show common design and identity, as discussed above.

Next, Johnson contends that he was denied a fair trial by the introduction of hearsay evidence. Specifically, Johnson argues that Detective Glynn's testimony that Demetrius Broadwater was allowed to see Tremmel at the police station and that Demetrius told Tremmel to "tell the truth," combined with Detective Glynn's subsequent testimony that Johnson was told that others had named him as the shooter, conveyed a message to the jury that Demetrius Broadwater had named Johnson as an offender. Thus, defendant concludes that this hearsay testimony denied him the right to confront his accusers.

■ We agree that it is somewhat of an anomaly that evidence that would otherwise be inadmissible if admitted for its truth is admissible merely by saying the "magic" words "not being offered for its truth." Nevertheless, we must rule Johnson's argument incorrect because it is clear that in neither instance is Detective Glynn's testimony being offered for its truth. Therefore, it was not hearsay. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223 (hearsay is any out-of-court statement offered for its truth).) This is especially true in light of the fact that, in the first instance, *i.e.*, the testimony that Demetrius told Tremmel to tell the truth, the court specifically admonished the jury that the evidence was not being offered as evidence

against Johnson and that it could only consider it in its assessment of Tremmel's credibility.

Two other issues raised on appeal deal with jury instructions, which Johnson contends were misleading. The first jury instruction to which Johnson objects is the instruction on accomplice testimony. The Illinois Pattern Jury Instruction which was tendered to the jury states as follows:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." Illinois Pattern Jury Instructions, Criminal, No. 3.17 (3d ed. 1992) (hereafter IPI Criminal 3d).

Johnson requested a modified form of this instruction, changing only the term "testimony" to the term "statements." The court refused to submit the modified version of the instruction.

Johnson now argues that by instructing the jury to consider Tremmel's *testimony* with suspicion rather than his *statements*, the court was telling the jury to disregard Tremmel's trial testimony and not his earlier statements, wherein he made the accomplice accusations against defendant. Johnson then concludes that the instruction led the jury to do the opposite of what it was supposed to have done and, for that reason, was misleading and error.

■ We find no merit to this argument. While it is true that jury instructions must fully and fairly apprise the jury of the applicable law (*People v. Prather* (1985), 138 Ill. App. 3d 32, 485 N.E.2d 430), the instruction used in this case did so, nor was it a misstatement of the law. In fact, the instruction begins by stating "When a witness says he was involved in the commission of the crime ***." We believe that the instruction clearly conveys to the jury that it is the evidence which accompanies the witness' admission to being an accomplice that must be viewed with suspicion.

Defendant objects to a remotely possible interpretation of the instruction which, he speculates, the jury could have employed. However, there is no basis for finding that the jury interpreted the instruction in this manner, especially in light of the fact that defense counsel, in closing argument, explained the instruction, making its meaning clear to the jury.

Despite the use of the term "testimony" in the text of the instruction, the jury was well aware that at trial Tremmel not only denied being an accomplice to the crime, he denied being present and made no accusations against any of the defendants. Therefore, the suspicion

that should attach to accomplice testimony applied only to Tremmel's prior written statement and grand jury testimony, wherein he assumed the status of an accomplice.

The second instruction to which Johnson objects told the jury the extent to which it could permissibly use other crimes evidence. The instruction which was given to the jury stated as follows:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment.

This evidence has been received on the issues of the defendant's identification, presence, and design and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issues of identification, presence and design." IPI Criminal 3d No. 3.14.

Johnson contends that there were three collateral crimes attributed to him at trial: the theft of the automobile, the conspiracy to rob "Unk's," and the Concord Oil gas station robbery. Johnson further denies that *any* of these collateral crimes were probative of identification, presence or design. Therefore, Johnson concludes that the instruction was erroneously given.

■ We have already discussed the admissibility of the evidence relating to collateral crimes, ruling that the Concord Oil gas station robbery evidence was admissible to establish defendant's presence near the location of the crime charged and to establish identity and common design. Consequently, we find that the instruction was properly given.

The last issue raised by defendant is one commonly resorted to by defendants on appeal—that the prosecutor misstated the evidence during closing argument and made other comments which served to inflame the passions and prejudices of the jury, thereby unfairly prejudicing him. In this case we find no reversible error based upon the prosecutor's closing statements.

It is well settled that the prosecutor is afforded considerable latitude in closing argument (*People v. Evans* (1988), 173 Ill. App. 3d 186, 527 N.E.2d 448) and that any prosecutorial misconduct in closing argument will warrant reversal only if, on review, it appears that the prosecutor's remarks constituted a material factor in the conviction. (*People v. Linscott* (1991), 142 Ill. 2d 22, 28, 566 N.E.2d 1355.) The prosecutor is entitled to summarize the evidence, make reasonable inferences that follow from the evidence and urge the conviction of the defendant based upon the evidence. *Linscott*, 142 Ill. 2d at 35, 38.

In this case defendant contends that it was a misstatement of the evidence for the prosecutor to "argue" that the car used in the Concord Oil robbery and the robbery charged were the same and that in both robberies "a car full of guys pulled up in the gas station."

██ Although it would have been a misstatement of the evidence for the prosecutor to have *told* the jury that the same car was used in both crimes, the prosecutor is certainly allowed to *argue* any reasonable inference drawn from the evidence. Therefore, we believe that the prosecutor's argument that in the two crimes "similarly described" cars "full of guys" were used was a fair inference drawn from the evidence.

Johnson additionally claims that the prosecutor's folksy or homey anecdotal story, remembering a sign his grandfather gave him about "doing the right thing" and two other personal observations were "thinly veiled attempts at vouching for his own credibility and persuading the jury by using the authority of the office." Again we disagree.

There is no question but that the prosecutor, as representative of the people of this State, must choose his or her words carefully and not use the authority of the office to persuade the jury, thereby undermining the integrity of the judicial system. (See *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) Nevertheless, we must be careful not to so restrict the prosecutor's comments that the "art" of making eloquent argument is totally lost. In this case we find that the prosecutor's remarks fell within the bounds of reasonable argument. However, even if they crossed over the line into the forbidden territory of improper comment, they were not so egregious that they denied the defendant a fair trial. In light of our other rulings above, the cited comments by the prosecutor could not have constituted a material factor in defendant's conviction. Therefore, if error, it was harmless.

For all the reasons cited above, we uphold the judgment entered in the trial court and affirm defendant Johnson's convictions and sentences.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.