THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE BOWEN, Defendant-Appellant.

First District (5th Division)  No. 1—96—3276

Opinion filed August 14, 1998.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

After a bench trial, the defendant, Maurice Bowen, was found guilty of first degree murder and unlawful use of a weapon by a felon and was sentenced to 60 years' imprisonment. On appeal, the defendant contends that (1) the admission of prior inconsistent and unsworn statements as substantive evidence of identification was a denial of his right to due process, (2) the evidence failed to prove the offender's identity, (3) the court's consideration of his demeanor was reversible error, and (4) his 60-year sentence was an abuse of discretion. We affirm.

The following evidence was adduced at trial. Jacqueline Smith, Va-

nessa Brown, and April Johnson saw the victim, James Nance, standing near the corner of 50th and Elizabeth Streets at around 9 p.m. on the evening of February 28, 1993, as they walked to a party in the neighborhood. Nance was talking to a girl standing in the window of the second-floor apartment at 5002 South Elizabeth. He was wearing a hooded Texas Longhorn jacket and black pants.

The three women stayed at the party about 20 minutes and then left. As they walked back toward the intersection of 50th and Elizabeth, they heard gunshots coming from the corner where the victim had been standing. Jacqueline testified that Nance was standing in the same spot as before. She observed a tall, thin person dressed in black and wearing a hooded jacket approach within four feet of Nance, point a gun at Nance's chest, and fire numerous shots at his face and chest. Jacqueline and the other women ducked until the shooting stopped, and then ran over to Nance and found him lying on the ground covered in blood. April offered a similar account of the shooting, but Vanessa testified that she immediately ducked behind a car and did not see the actual shooting. None of the women could see the perpetrator's face. Nance, who was 13 years old at the time, died of multiple gunshot wounds.

Lamont Brown, an admitted gang member, testified at trial that he was outside his apartment at 5002 Elizabeth on the afternoon of February 28, 1993, when he saw a blue Malibu drive by twice. Brown recognized the men in the car as "Bam," "Ricardo," and "Maurice," who were rival gang members he had known for a couple of years. As the Malibu stopped at 50th and Elizabeth, the occupants looked at Brown and then drove away. Brown was wearing a Texas Longhorn jacket and black pants.

Brown said he went inside to play with his niece. He then went to a front room facing the street, opened the window, and talked with his sister, Vanessa, and his ex-girlfriend, April, who were standing across the street. Brown saw a boy in front of his building conversing with someone who lived in the apartment above Brown's. He later learned this boy was Nance. Nance wore a Texas Longhorn jacket and had his hood pulled up on his head. While Nance was in front of Brown's apartment, the blue Malibu again drove down Elizabeth. According to Brown, Bam was driving the car, Maurice was in the front passenger seat, and Ricardo was in the backseat. Brown stated that the car stopped a few houses away and Maurice exited the passenger's side with his hood covering his head and walked towards Nance. Maurice approached Nance and pulled out a handgun. Maurice pointed the gun at Nance and fired several shots. After the shooting stopped, Brown exited his apartment and saw Nance lying on the ground and Maurice running across the street into a gangway.

Brown denied that the defendant in the courtroom was the same Maurice in the blue Malibu that had shot Nance. He explained that he was familiar with two people named Maurice, both of whom were members of a street gang in conflict with Brown's gang. Brown admitted owning a Texas Longhorn jacket with a hood in February 1993, but he said that the coloring was different than the jacket worn by Nance. Brown also acknowledged that he had been sent to the Audy Home because he had gotten into a fight with a relative of Ricardo a month before Nance's shooting.

Brown recalled speaking with Detective Cliff Gehrke at the Audy Home, but he denied being shown any photographs. Brown admitted that he attended a lineup on June 17, 1993, and identified the defendant. However, Brown explained that he did not identify the defendant as the person who shot Nance; rather, he identified the defendant as a member of a rival gang. Brown said that it was the other Maurice he knew, not the defendant, who shot Nance. According to Brown, he told the police that the defendant was not the perpetrator but the police warned him that if he "didn't say it was him they was [sic] going to—I would never see—only way I see my family is behind the glass and they'd drop some of my cases and they'll drop some of my juvenile cases."

Brown denied telling anyone that, two days prior to his trial testimony, the defendant had made faces at him and stared at him while Brown was in a holding cell at Cook County jail. Brown further denied telling the prosecutor and others the day before his testimony that the defendant had all of his "buddies" look at his face so they could remember him if Brown identified the defendant.

In impeachment of Brown, the defense presented his criminal record and history of delinquency. In addition to an adult conviction for aggravated discharge of a firearm, he had two adjudications of delinquency for possession of a controlled substance and criminal sexual assault.

Detective Cliff Gehrke testified that he was assigned to Nance's murder. Gehrke recalled that, when he viewed the body, Nance was wearing a Texas Longhorn jacket. Gehrke met with Brown at the Audy Home in May 1993, after Gehrke was informed that Brown was a possible eyewitness to Nance's murder. Gehrke was accompanied by Assistant State's Attorney Martin Fogerty and Assistant Public Defender Lisa Kaufman.

Gehrke learned that Brown had been living at 5002 Elizabeth in February 1993 with his mother and sister, Vanessa, and that he had witnessed the shooting from an apartment window overlooking the street. Gehrke stated that, after Brown gave him some first names

and a nickname of the perpetrators, he went and retrieved photographs and returned to the Audy Home with Fogerty and Kaufman. According to Gehrke, he showed Brown an array of five or six photographs and Brown identified a photograph of the defendant as the person who shot Nance. Gehrke testified that both he and Brown signed the back of the defendant's photograph.

Gehrke said that Fogerty then spoke with Brown and prepared a written four-page statement of Brown's account of the shooting. According to Gehrke, Brown reviewed the statement, was allowed to make changes, and signed each of the pages. The police located the defendant and brought him in for a lineup. Gehrke testified that Brown identified the defendant out of five individuals in the lineup as the one who shot Nance.

On March 23, 1996, Gehrke observed Brown on the corner of 50th and Elizabeth, arrested him, and brought him into the police station. Gehrke· testified that his arrest was pursuant to a warrant for contempt of court with regard to the instant case.

The parties stipulated that, on March 27, 1996, the day before trial, Brown was in the holding cell across from the elevator used to transfer prisoners at Cook County jail. During the time Brown was in the holding cell, the defendant and other prisoners walked past the cell and stood for approximately one minute near the elevator. The parties further stipulated to the testimony of a law clerk from the State's Attorney's office who, if called to testify, would state she was present for a conversation between State counsel, another assistant State's Attorney, and Brown on March 28, 1996, during which Brown refused to talk. When asked what was wrong, Brown said the defendant and some of his "buddies" looked at him in the holding cell so that they could remember his face.

After discussion with counsel, the trial judge allowed into evidence, as a prior inconsistent statement under section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1996)), one sentence from the written statement taken by Fogerty in which Brown recalled that "when Maurice got out of the car he put his hood up on his head, and started walking towards James." This statement contradicted Brown's testimony at trial that Maurice emerged from the blue Malibu with his hood already on his head. .

During closing arguments, defense counsel objected to the State's contention that Brown's prior out-of-court identifications of the defendant were admissible as substantive evidence under section 115—12 of the Code (725 ILCS 5/115—12 (West 1996)). In rendering his decision, the trial judge referred at length to Brown's prior identifications of

the defendant and noted that the case "is essentially a single witness ID situation." The judge found the defendant guilty of first degree murder. The defendant's motion for reconsideration or, alternatively, for a new trial was denied, and he was sentenced to 60 years' imprisonment. This appeal followed.

■ The defendant initially contends that the admission of Brown's prior statements as substantive evidence of identification was reversible error where he denied making the statements at trial and testified that the defendant did not commit the crime. The State maintains that such statements were admissible under section 115—12 of the Code, which provides:

"§ 115—12. Substantive Admissibility of Prior Identification. A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115—12 (West 1996).

The defendant contends that section 115—12 of the Code provides a hearsay exception for out-of-court identifications only if the prior statements at issue are consistent with an identification of the defendant at trial. *People v. Davis*, 137 Ill. App. 3d 769, 484 N.E.2d 1098 (1985). In *Davis*, this court read section 115—12 narrowly and concluded that it merely permitted the admission of prior consistent identification statements as both corroborative and substantive evidence. Thus, because the complaining witness in *Davis* was unable to identify Davis in open court, the court held the witness' prior identifications were not admissible as substantive evidence under section 115—12. See *Davis*, 137 Ill. App. 3d at 771-72.

However, section 115—12 on its face permits the substantive admission of prior identification statements without regard to whether the witness makes an in-court identification. The language of this section does not require an in-court identification, nor does it prohibit the introduction of a prior identification statement where the witness fails to identify the defendant in open court. See 725 ILCS 5/115—12 (West 1996).

In *People v. Holveck*, 141 Ill. 2d 84, 565 N.E.2d 919 (1990), a case subsequent to *Davis*, the State questioned its identification witness about her out-of-court identification of the defendant but did not attempt an in-court identification. The supreme court determined that the elements of section 115—12 were satisfied and that the out-of-court identification was properly admitted because the witness testified at trial and was subject to cross-examination. *Holveck*, 141 Ill. 2d at 105. Thus, *Holveck* does not restrict the hearsay evidence admis-

sible under section 115—12 to those prior identifications that corroborate a positive in-court identification.

The defendant relies on the supreme court's statement in *People v. Lewis*, 165 Ill. 2d 305, 651 N.E.2d 72 (1995), that "[section 115—12] is designed to permit the use of prior *consistent* out-of-court statements as corroborative or substantive evidence of a witness' prior identity of a defendant." (Emphasis in original.) 165 Ill. 2d at 343. However, a close reading of *Lewis* indicates that this passage refers to the fact that the defendant argued that section 115—12 permitted the substantive admission of a prior statement that *misidentified* him as the offender. Specifically, the defendant there proffered an arrest report description which conflicted with prior descriptions of the assailant in the incident reports. The court noted that the arrest report description was neither corroborative of the complaining witness' prior identification of the defendant nor was it substantive evidence of such. *Lewis*, 165 Ill. 2d at 343. Therefore, the statute did not apply in that instance. *Lewis*, 165 Ill. 2d at 343.

■ Section 611.16 of Cleary & Graham's Handbook of Illinois Evidence states:

"[P]rovided the declarant testify at trial and be subject to cross-examination concerning the prior statement of identification of a person made after perceiving him, the prior statement of identification, testified to by the declarant or another witness, including a police officer, is now admissible as an exception to the hearsay rule as substantive evidence without regard to whether the statement of prior identification corroborates a positive in-court identification by the declarant, is offered as a substitute for an inability to make an in-court identification, or to bolster a weak in-court identification on the part of the declarant." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.16, at 481 (6th ed. 1994).

We adopt this position set forth in Cleary and Graham. *People v. Gonzalez*, 292 Ill. App. 3d 280, 685 N.E.2d 661 (1997). In *Gonzalez*, the second district also emphasized that sound public policy supports the proposition that section 115—12 permits the introduction of a prior identification even where the witness is unable to identify the defendant in open court. Whereas a witness' initial identification of the defendant often occurs within days or hours of the crime, the defendant's trial typically occurs months after the initial identification. Therefore, an identification closer to the time of the crime should not be kept from the jury solely because the witness is later unable to identify the defendant at trial when he may have since modified his appearance. See *Gonzalez*, 292 Ill. App. 3d at 287. Accordingly, we conclude that the trial court properly admitted as substantive evidence Brown's

prior identification of the defendant, despite his inability or refusal to identify the defendant in open court.

We reject the defendant's argument, based on *People v. Johnson*, 255 Ill. App. 3d 547, 626 N.E.2d 1073 (1993), that the admission of Brown's prior identifications violated the defendant's right to federal due process because these statements failed to meet the constitutional guarantees of trustworthiness. We distinguish *Johnson*, which referred only to section 115—10.1 in determining that "an additional inquiry must be made to show that the admission of a prior inconsistent statement satisfies constitutional due process requirements." 255 Ill. App. 3d at 558.

Moreover, in *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988), the Supreme Court considered a defendant's challenge under the confrontation clause to Rule 801(d)(1)(C) of the Federal Rules of Evidence (Fed. R. Evid. 801(d)(1)(C)), from which our section 115—12 of the Code is taken (see *People v. Robinson*, 163 Ill. App. 3d 991, 516 N.E.2d 1322 (1987)). In its constitutional analysis, the Court determined that the dangers associated with hearsay are not implicated when a hearsay declarant is present at trial and subject to unrestricted cross-examination. *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843. Rather, the constitutional requirements are satisfied where the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor are present. *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843.

■ The defendant next contends that the State failed to prove his guilt beyond a reasonable doubt. It is not the function of this court to retry a defendant when considering a challenge to the sufficiency of the evidence. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837 (1991). Rather, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Steidl*, 142 Ill. 2d at 226.

■ The occurrence witnesses all testified similarly, although no one, except Brown, saw the perpetrator's face. Brown testified that he saw the shooter's face but that it was another Maurice he knew, not the defendant. However, we have affirmed the trial court's decision allowing into evidence Gehrke's testimony as to Brown's prior identification of the defendant. Gehrke testified that Brown recognized the three individuals in the blue Malibu as Bam, Ricardo, and Maurice. According to Gehrke, Brown said that Maurice exited the Malibu, pulled up his hood, walked up to Nance, and shot him several times before running down an alley. Gehrke testified that Brown picked the

defendant's picture out of a photograph array as the person that shot Nance and that he and Brown both signed the defendant's photograph. Moreover, Gehrke testified that Brown picked the defendant out of a lineup as the person that shot Nance. Although Brown insisted that he merely identified the defendant as a rival gang member, the trial court was entitled to believe Gehrke's statements and reject Brown's explanation.

The trial court could have attributed Brown's actions in court to his fear of the defendant and other rival gang members. Brown was arrested and put in Cook County jail during the week prior to the defendant's trial. The parties stipulated to the fact that Brown told prosecutors that the defendant and his friends looked at him in the holding cell so that they would remember his face. Although Brown denied these stipulations at trial, the trial judge could have properly determined that Brown was afraid to identify the defendant and felt compelled to recant his earlier statements.

Given Gehrke's testimony and the occurrence testimony of Brown and the other witnesses, we cannot say that no rational trier of fact could have found the elements of the charged offense to have been proved beyond a reasonable doubt. Accordingly, we affirm the defendant's conviction for first degree murder.

■ The defendant next contends that the trial court's consideration of his demeanor was reversible error since the defendant exercised his fifth amendment right not to testify at trial. In finding the defendant guilty, the trial judge stated:

> "I have watched the demeanor of the witnesses and [sic] as well as the demeanor of the defendant. Based upon the credibility of the witnesses, the Court find [sic] the defendant guilty as charged."

The defendant has correctly noted that a defendant's demeanor, in any respect other than during his testimony, does not constitute evidence in a case. See *People v. Foss*, 201 Ill. App. 3d 91, 559 N.E.2d 254 (1990). However, in order for the trial judge's comment here to amount to reversible error, the defendant must demonstrate that it constituted a material factor in the conviction. *People v. Brown*, 172 Ill. 2d 1, 38, 665 N.E.2d 1290 (1996). A review of the record indicates that, while the comment was improper, it was also an isolated remark, and the judge did not dwell on the issue of the defendant's demeanor in rendering a conviction. Nor has the defendant demonstrated how the statement constituted a material factor in the outcome of his trial. Accordingly, we find the error to be harmless since the defendant was not prejudiced.

■ The defendant next contends that his 60-year term of imprisonment was an abuse of the trial court's discretion. The State argues

that the defendant waived this issue by failing to object during the sentencing hearing and failing to file a postsentencing motion. *People v. Reed*, 177 Ill. 2d 389, 393-94, 686 N.E.2d 584 (1997); 730 ILCS 5/5—8—1(c) (West 1996). The defendant contends that *Reed*, which was decided after the sentencing in this case, does not apply. However, the supreme court in *Reed* did not direct that its decision be applied prospectively only. Moreover, section 5—8—1(c) of the Unified Code of Corrections, on which *Reed* is based, was amended by Public Act 88—311, effective August 11, 1993, long before the defendant was sentenced here. We conclude that *Reed* applies to the present case.

■ Accordingly, we may review this issue only if we find plain error, which occurs "when a defendant is deprived of a substantial right, and thus is deprived of a fair trial, or when an error is made in a case with closely balanced evidence." *People v. Bean*, 137 Ill. 2d 65, 80, 560 N.E.2d 258 (1990). We find no basis on which to invoke the plain error doctrine here. The sentence was within the statutory limits (see 730 ILCS 5/5—8—1(a) (West 1996)), the court considered the proper factors, and we find no abuse of the trial court's discretion. Accordingly, we hold that the defendant has waived any contentions of error at sentencing by failing to raise those issues in a postsentencing motion in the trial court.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. As part of our judgment, we grant the State's request and assess the defendant $100 as costs for defending this appeal.

Affirmed.

THEIS and HOURIHANE, JJ., concur.