SECOND DIVISION

DECEMBER 31, 1998

1-97-1266

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court 

Plaintiff-Appellee ) of Cook County

)

v. ) No. 93 CR 13498

)

JEFFERY TODD WILSON, ) The Honorable

) Marcus Salone,

Defendant-Appellant. ) Judge Presiding

JUSTICE COUSINS delivered the opinion of the court:

After a bench trial, the defendant, Jeffery Todd Wilson, was convicted of first degree murder, aggravated arson and arson.  He was sentenced to the mandatory term of natural life in prison.  The defendant appeals his convictions on the basis of evidentiary rulings that he claims deprived him of a fair trial.

The defendant claims that the trial court erred in: (1) admitting hearsay statements that did not comply with all the due process requirements set out in federal case law; (2) admitting as substantive evidence prior inconsistent statements of two witnesses in violation of section 115-10.1 of the Code of Criminal Procedure of 1963 (the Act) (725 ILCS 5/115-10.1 (West 1994); and (3) admitting hearsay statements of a nontestifying codefendant in violation of the defendant's rights under the confrontation clause (U.S. Const. amend. VI).

BACKGROUND

This case concerns the burning of a two-story apartment building.  Two men, Floyd Spencer and Lee Burnett, died in the fire.  Fire investigators found evidence that was consistent with arson, but the evidence was not conclusive.  The building, owned by John “Screwball” Barnes, had two apartments on each floor.  It was described as a “smokehouse” because drugs were sold out of the second-floor rear apartment and the purchasers could stay and smoke their drugs.  The residents of this apartment were called Claude “Blood” Benson, "J.C.," Charles “Poncho” Williams and Floyd Spencer.  The first-floor rear apartment was occupied by Carol Ramsey, Reginald Jett and their daughter Tiffany.  Carol Ramsey would get drugs from Screwball and give them to Poncho.  Poncho sold the drugs and Blood collected the money.

At trial, Ms. Ramsey testified as follows: On August 4, 1990, at about 3 a.m., she was arguing with Blood at the apartment building.  He claimed that Screwball owed the Black Souls street gang money.  Blood left and Mr. Jett came home.  At 4 a.m., Mr. Jett went to the window because he heard someone arguing.  He said that he smelled gasoline but Ms. Ramsey did not smell anything.  Then she saw a blaze of flames and heard two explosions.  When she looked out of the window, she saw three people running from the building toward a car.  She could not describe the men, however.

This testimony was consistent with what Ms. Ramsey had told the police in 1993, but differed from what she told the police in 1990.  In 1990, she said that neither she nor Mr. Jett had heard or seen anyone outside before the fire.  She said that she did not know the reason for the fire.

Mr. Jett testified that he was a member of the Gangster Disciples street gang.  He said that on the night of the fire he  saw a blue Chevrolet Malibu pass the house several times.  He did not mention the car to the police after the fire, however.  At one point late that night he heard noises outside.  Then he heard Blood saying that "they" were about to burn the building.  He smelled gas fumes, and when he looked out the window he saw the defendant and the blue Malibu again.  He saw flames, heard two explosions and ran out the back door.

Claude “Blood” Benson testified that he was a member of the Black Souls in 1990.  On August 3, 1990, Blood spoke with the defendant in back of the building.  The defendant told him to tell Screwball that the smokehouse would be closed down or burned down.  At 4 a.m. the next day he saw the defendant and Mr. Page, the codefendant, through the smokehouse window.  The defendant told him to get out, “it’s got to go up.”  He saw the defendant dash some liquid on the stairway, which Mr. Page set alight.  Blood then told everyone to leave.  He saw flames and heard two explosions.  He learned the next day that Floyd Spencer and Lee Burnett had died in the fire.  He did not go to the police, however.

Charles “Poncho” Williams was in the apartment at the time the fire started.  He testified that he saw Mr. Page and the defendant empty some liquid from canisters and then saw the defendant set it alight.  He testified that he remained calm and helped to evacuate the building.  On cross-examination, however, he admitted telling the police that he thought there might be gunfire, so he threw a woman out of the second-story window to see if they would shoot her before escaping himself. 

State’s witnesses Mary Ward and Kendall Brent were living together in 1990.  Ms. Ward was talking to detectives in 1993 about the (unrelated) murder of her cousin when they brought up the fire.  In this conversation with the officers and a subsequent statement taken by an assistant State’s Attorney (ASA) Ms. Ward said that she was at the corner of Francisco and Adams at the time of the fire with Mr. Brent and Mr. Page, the codefendant.  The defendant, who she says had rank in the Black Souls, and his brother pulled up in a station wagon.  Mr. Brent and Mr. Page went up to the car.  Mr. Page got in and then the car drove off.  Mr. Brent came back to her and said “they got to be crazy, I ain’t blowing up anybody.”  Mr. Brent told her that the defendant had asked Mr. Page and him to help blow up the building because he had told the people running the smokehouse to stop selling drugs and they refused.  Ten minutes later she heard an explosion, ran to the corner and saw the building on fire.  The station wagon came back. The defendant got into his truck and drove away.  Mr. Page told her and Mr. Brent that he had pulled a cork out of two bombs, thrown them into the front window of the building and then ran before it blew up.  

Ms. Ward also testified before a grand jury and gave a similar account of events.  In her grand jury testimony, she stated that, after the defendant and Mr. Page pulled up, Mr. Page told Mr. Brent that "[y]ou didn't think I was going to do it, did you[?]  It was the easiest $200 I ever made."  He also called Mr. Brent a coward because he did not assist in the arson.

At trial however, Ms. Ward denied knowing anything about the incident except that there was a smokehouse run by Screwball in the neighborhood.  Rather, she testified that she was at home that night waiting for Mr. Brent to return.

The State impeached Ms. Ward with her prior inconsistent statements, which were admitted as substantive evidence.  She said that she had not read the statement given to the ASA.  The contents were read to her in court and she denied that they were true.  The defense made repeated hearsay objections.

On cross-examination, Ms. Ward testified that the police told her that they really wanted the defendant off the streets and that he was responsible for her cousin’s death.  She said that they fed her the information they wanted.  She also claims that she was under the influence of heroin when giving the statement.  When she found out that the defendant had nothing to do with her cousin’s death, she did not want to help anymore.  She said that her grand jury testimony, which also was read in court, was false as well.  

The ASA who had taken Ms. Ward’s statement testified that she had gone over the statement line by line with Ms. Ward and given her a chance to make corrections, which Ms. Ward initialed.  The statement was signed by the ASA, the detective and Ms. Ward.

After the police had taken Ms. Ward’s statement, they located Kendall Brent, who agreed to go to the police station with them.  An ASA took a statement from him.  The statement related that he and Ms. Ward were on the steps of the Calhoun school about 3:30 a.m. on August 4, 1990.  The defendant drove up in his Toyota 4-Runner.  There was another person in the vehicle, but Mr. Brent did not know this person’s name.  Mr. Brent and Mr. Page both belonged to the Gangster Disciples and he knew that the defendant held rank in the Black Souls.

The defendant told them that he intended to burn Screwball out because he refused to pay a portion of the drug proceeds.  Mr. Page offered to act as a lookout and got into the vehicle.  Mr. Brent walked back to Ms. Ward and told her that they were crazy.  About 20 minutes later, they saw fire trucks going down the street.  The defendant drove up and Mr. Page got out of the vehicle.  He told them that he had gotten $1,000 for helping.  An ASA claimed that she and an investigator met with Mr. Brent in 1995 and he told her that the contents of the statement were accurate.

At trial Mr. Brent denied saying that any of this happened.  He did not remember meeting with an ASA and telling her that the handwritten statement was accurate.  The ASA in question testified that she had had that conversation.  Mr. Brent was impeached with prior inconsistent statements.  The defense objected to this as hearsay.

On the basis of the testimony related above, as well as other evidence, the trial court found the defendant guilty.  The defendant made a motion for a new trial, which the court denied.  The defendant now appeals to this court, claiming that improper admission of hearsay testimony deprived him of a fair trial.  For the following reasons, we affirm the defendant's conviction.

ANALYSIS

I

The defendant first contends that the trial court violated his constitutional right to due process in admitting as substantive evidence the prior inconsistent statements of Mary Ward and Kendall Brent.  For the reasons that follow, we disagree.

The defendant correctly observes that admission of out-of-

court statements under certain circumstances may raise due process concerns.  In 
California v. Green
 (399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970)), the United States Supreme Court considered whether a statute allowing substantive admissibility of prior inconsistent statements violated the confrontation clause.  In a footnote, the Court recognized the possibility that a conviction based on hearsay might not be sustainable under the due process clause.  The Court wrote:

"While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking [citation] we do not read 
Bridges
 as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted."  
Green
, 399 U.S. at 163 n.15, 26 L. Ed. 2d at 500 n.15, 90 S. Ct. at 1938 n.15.

United States v. Leslie,
 542 F.2d 285 (5th Cir. 1976), a fifth circuit case, dealt with the federal "catch-all" hearsay exception. Fed. R. Evid. 803(24).  This exception allows admission of statements that, though not covered by one of the recognized hearsay exceptions, have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 803(24). In affirming that a prior inconsistent statement was substantively admissible under Rule 803(24), the 
Leslie
 court borrowed five factors that the Second Circuit (
United States v. Iaconetti
, 406 F. Supp. 554, 558-60 (E.D.N.Y. 1976)) had held were sufficient equivalent "circumstantial guarantees of trustworthiness" to make a hearsay statement admissible under this rule:

(1) the declarant was available for cross-examination;

(2) the statement was made shortly after the events related and was transcribed promptly;

(3) the declarant knowingly and voluntarily waived the right to remain silent; 

(4) the declarant admitted making the statement; and

(5) there was some corroboration of the statement's reliability. See 
Leslie
, 542 F.2d at 290-91.  

Leslie
 primarily dealt with the Federal Rules of Evidence, not the Constitution.  Furthermore, "the factors were not meant to be a litmus test for the admissibility (and reliability) of a prior unsworn inconsistent statement." 
Ticey v. Peters
, 8 F.3d 498, 501 (7th Cir. 1993).

In 
Vogel v. Percy
, 691 F.2d 843 (7th Cir. 1982), the defendant argued that his conviction violated due process on the basis of substantive use of prior inconsistent statements.  Even though admission of the statements complied with the dictates of Wisconsin statutory law (Wis. Stat. §908.01(4) (1997)), the seventh circuit saw it necessary to adopt the 
Leslie
 factors as "guidelines to determine whether substantive use of a prior inconsistent statement would comport with due process." 
Vogel
, 691 F.2d at 846.  Adherence to the guidelines, the court wrote, would prevent convictions such as those spoken of in 
Green
, "where a reliable evidentiary basis is totally lacking." 
Vogel
, 691 F.2d at 848.

After the decision in 
Vogel
, the Illinois legislature passed the Act, which reads:

"Admissibility of Prior Inconsistent Statements.  In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement --

(1) was made under oath at a trial, hearing or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.  

Nothing in the Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." 725 ILCS 5/115-10.1 (West 1994).

It is important to note that, unlike the Wisconsin statute discussed in 
Vogel
, the Act contains many safeguards designed to ensure the reliability of prior inconsistent statements.

The defendant maintains that regardless of whether the prior statements of Ms. Ward and Mr. Brent meet the requirements of the Act, the statements do not conform to the factors in 
Vogel
.  In particular, the statements were not made shortly after the events related, but more than two years later.  Accordingly, the defendant concludes, the statements were erroneously admitted.

The primary case on which the defendant relies is 
People v. Johnson
, 255 Ill. App. 3d 547, 626 N.E.2d 1073 (1993).  The court in 
Johnson
, citing a federal district court case (
United States ex rel. White v. Lane
, 785 F. Supp. 768 (N.D. Ill. 1992)), noted that there was "some support" in federal law for the idea that "a witness' prior inconsistent statement, although properly admitted as substantive evidence in compliance with Illinois statutory law, might not be admissible as substantive evidence under constitutional due process standards." 
Johnson
, 255 Ill. App. 3d at 558, 626 N.E.2d at 1081.  

Although 
White
 indicated in 
dictum
 that the substantive use of a prior inconsistent statement could only pass muster under the due process clause by satisfying 
all
 of the 
Leslie
 factors (
White
, 785 F. Supp. at 776), subsequent seventh circuit cases have made clear that the factors are only guidelines.  They are not the "exclusive means by which reliability of out-of-court statements could be judged." 
Ticey
, 8 F.3d at 502.

In fact, the seventh circuit made this clarification in connection with the facts of 
People v. Johnson
 itself.  The defendant in 
Johnson
 filed an appeal in the seventh circuit from the dismissal of his 
habeas corpus
 petition in federal district court.  
Johnson v. Washington
, 119 F.3d 513 (7th Cir. 1997).  The 
Johnson v. Washington
 court agreed with an Illinois appellate decision, 
People v. Morales
, 281 Ill. App. 3d at 703, 666 N.E.2d at 844-45, that the Act "adequately protects constitutional rights independently." 
Johnson v. Washington
, 119 F.3d at 522.

People v. Johnson
 affirmed the defendant's conviction on the basis that the prior inconsistent statements used as substantive evidence satisfied both the requirements of the Act and the requirements of 
Vogel
.  
Johnson
, 255 Ill. App. 3d at 560, 626 N.E.2d at 1083.  In light of the later seventh circuit cases clarifying 
Vogel
, the second basis was unnecessary to the affirmance.   

Although 
Leslie
 and 
Vogel
 both hold that compliance with the factors is a sufficient condition for substantive admissibility of a prior inconsistent statement, neither says that it is a necessary condition.  See 
Ticey
, 8 F.3d at 502.  The factors in 
Vogel
 "were not meant to be absolutes." 
Ticey
, 8 F.3d at 502-03.  These factors set out conditions that can ensure the reliability of a prior inconsistent statement, but these are not the only possible conditions that could do so.  The Act also sets out conditions--for instance, videotaping--that can adequately guarantee the reliability of a prior consistent statement. The factors in the Act are equivalent circumstantial guarantees of trustworthiness that prevent convictions where a reliable evidentiary basis is totally lacking.  In our view, the Act on its own provides adequate protection of constitutional due process rights.  See 
Morales
, 281 Ill. App. 3d at 703, 666 N.E.2d at 844-45.

Accordingly, the fact that the statements were made long after the events related properly went to the weight to be accorded them, not to their substantive admissibility.

II

The defendant next argues that the admission of the prior statements also violated the Act.  In our view, the defendant is at least partially correct.

Fortunately, we have ample legislative history to guide us in the interpretation of the Act. The drafter of the Act was Judge Robert J. Steigmann, who wrote an article explaining it.  R. Steigmann, 
Prior Inconsistent Statements as Substantive Evidence in Illinois
, 72 Ill. B.J. 638 (1984).  Judge Steigmann based the Act on a proposal by Professor Michael H. Graham. M. Graham, 
Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of the Federal Rules of Evidence 801(d)(1)(a), 613 and 617
, 75 Mich. L. Rev. 1565 (1977).  In the legislative debate, lawmakers acknowledged that the Act had its genesis in that article.  "This acknowledgment is significant because it incorporates for legislative history the explanations provided by Graham in his article when disputes arise as to either the meaning or the scope of section 115-10.1." 72 Ill. B.J. at 639.

Mary Ward's grand jury testimony was clearly admissible under section 115-10.1(c)(1) of the Act because the statement was made under oath "at a trial, hearing or other proceeding."  There is no personal knowledge requirement for section 115-10.1(c)(1) statements.  725 ILCS 5/115-10.1(c)(1) (West 1994).  The handwritten statements of Ms. Ward and Mr. Brent for the most part were admissible under section 115-10.1(c)(2)(A) (725 ILCS 5/115-10.1(c)(2)(A) (West 1994)), since the testimony of the detectives and ASAs provided adequate proof for the trial court to have found that Mr. Brent and Ms. Ward had signed their respective statements.  Ms. Ward's claims that she was on drugs when she gave the statement, did not read the statement, and was induced to give a false statement were properly matters for the trier of fact.  "[O]nce the court is persuaded by a preponderance of the evidence that the prior statement was in fact written or signed by the witness, it need make no determination of any other facts relating to the statement, for evaluation of the circumstances surrounding the making of the statement is left to the jury." 75 Mich L. Rev. at 1592; see also 72 Ill. B.J. at 641-

42.

Portions of the handwritten statements, however, should not have been admitted as substantive evidence, since the witnesses did not have personal knowledge of the subject matter.  The personal knowledge required by the Act is of a particular kind.  The requirement "excludes from evidence all prior statements of a witness that merely narrate a third person's declaration unless the witness also has personal knowledge of the facts underlying the third person's statements." 75 Mich. L. Rev. at 1584-85.  A third person's declaration cannot serve as the basis of the personal knowledge; the witness must have firsthand knowledge of the event.  Professor Graham uses an example to show how he intends the personal knowledge requirement.

"The following illustration demonstrates the importance of personal knowledge.  Assume that in a bank robbery prosecution the defendant calls a friend to the stand.  The friend testifies that he saw the defendant at a local bar on the night of the offense, that the defendant did not say anything to him at that time, and that he appeared in normal health and was not carrying anything.  Assume further that the prosecution possesses a written statement by the friend that concerns the night in question.  While on the stand, the friend admits having written and signed the statement, though he denies its factual accuracy.  Under the proposals discussed above involving personal knowledge, a prior inconsistent statement contained in the friend's written declaration to the effect that the defendant had admitted robbing the bank would not be admissible ***, since the friend had no personal knowledge of the matter dealt with in the prior inconsistent statement.  Conversely, a prior inconsistent statement in the friend's declaration to the effect that when the defendant entered the bar he was very sweaty and out of breath, was wearing a torn shirt and was carrying a brown paper bag would be substantively admissible, since the friend's prior inconsistent statement sufficiently demonstrates his personal knowledge of the matters stated." 75 Mich L. Rev. at 1585-86.

This example is on all fours with the case at bar.  While Ms. Ward's and Mr. Brent's prior inconsistent statements generally would be admissible, those portions in which Mr. Page admitted having blown up the building were not admissible.  "This type of statement--the 'double hearsay' statement, typified by the admission-confession of the criminal defendant--is the kind of evidence that has most concerned the judicial system, for it raises the greatest danger of misapplication by the jury and the greatest risk of total fabrication by the witness." 75 Mich L. Rev. at 1586. "[A]dmission-confessions, the least reliable and most damaging evidence to the criminal defendant, would not be admitted as substantive evidence even if the alleged admission is contained in a signed statement of the in-court witness, unless the declarant also has personal knowledge of the underlying event."  75 Mich L. Rev. at 1587-88.  An alleged admission-

confession such as Mr. Page's is the exact type of statement that the personal knowledge requirement was designed to exclude from substantive evidence.  See 
People v. Cooper
, 188 Ill. App. 3d 971, 544 N.E.2d 1273 (1989); 
People v. Coleman
, 187 Ill. App. 3d 541, 547, 543 N.E.2d 555, 559 (1989).

The statements that Mr. Page allegedly made after the fire started were thus inadmissible as substantive evidence.  But the statements made by the codefendants prior to the fire are in a different category.  The defendant's statement that he was about to burn Screwball out was a statement of present state of mind.  Declarations of intent are admissible under this hearsay exception.  
People v. Bartall
, 98 Ill. 2d 294, 456 N.E.2d 59 (1983). These statements were not an account of an event outside the personal knowledge of the witnesses and, therefore, they were admissible as substantive evidence.  
People v. Saunders
, 220 Ill. App. 3d 647, 658, 580 N.E.2d 1246, 1255 (1991).

The defendant also claims that it was error for the trial court to admit testimony by police officers and ASAs as to oral statements allegedly made by Ms. Ward and Mr. Brent that, at trial, Ms. Ward and Mr. Brent denied that they had made.  This issue has been waived since the defense did not object to it. 
People v. Enoch
, 122 Ill. 2d 176, 190-91, 522 N.E.2d 1124 (1988). Furthermore, although admission of such testimony as substantive evidence would have been improper under the Act, the judge did not state that he was admitting this testimony as substantive evidence.  In fact, he indicated to the contrary by stating at the motion for a new trial that he did not consider the oral statements in arriving at his verdict.

The fact that a statement is not admissible as substantive evidence under the Act does not mean that the statement is inadmissible for impeachment purposes.  The Act provides that "[n]othing in the Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." 725 ILCS 5/115-10.1 (West 1994).

Prior inconsistent statements generally are admissible for impeachment in Illinois. 
People v. Collins
, 49 Ill. 2d 179, 194, 274 N.E.2d 77 (1971).  The statement must truly be inconsistent with the trial testimony and deal with a matter that is more than collateral.  Also, a proper foundation must be laid.  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.9 (5th ed. 1990).  The defendant, however, has not claimed that any of these requisites for the testimony concerning the oral statements to be used for impeachment were lacking.

The defendant also contends that Ms. Ward's testimony as to what Mr. Brent told her that Mr. Page and the defendant said poses a triple hearsay problem.  In such a situation an exception is needed for each level of hearsay if the testimony is to be substantively admissible. See E. Cleary, McCormick on Evidence §313 (3d ed. 1984). Mr. Page's conversation with Mr. Brent falls under the present state of mind hearsay exception.  Most of Ms. Ward's statement to the ASA is exempted from the hearsay rule by the Act.  Mr. Brent's statement to Ms. Ward, however, does not fit under a hearsay exception and, thus, was not admissible as substantive evidence.  The defense made timely objection to this testimony.  At first the judge ruled it admissible, but then changed his ruling. When the defense objected during the reading of Mr. Brent's statement, the court responded:

"All right.  As I have previously reversed myself in the testimony of Miss Ward, and essentially the same situation that hearsay once removed will not be admitted as substantive evidence."

Since the trial court recognized that the statements in question were not admissible as substantive evidence, the trial court did not err.

III

The defendant also argues that the admission of the portions of Ms. Ward and Mr. Kendall's prior inconsistent accounts that contained statements by Mr. Page violated his constitutional right under the confrontation clause (U.S. Const. amend. VI) to cross-examine witnesses, as set out in  
Bruton v. United States
, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968).  Mr. Page chose to exercise his right not to testify and, thus, the defendant could not cross-examine him regarding alleged out-of-

court statements.  Subsequent to 
Bruton
, however, the United States Supreme Court has held that if testimony falls within a "firmly rooted hearsay exception," this is sufficient to satisfy the confrontation clause.  
Bourjaily v. United States
, 483 U.S. 171, 183, 97 L. Ed. 2d 144, 157, 107 S. Ct. 2775, 2782-83 (1987).

In 
People v. Thomas
, 178 Ill. 2d 215, 687 N.E.2d 892 (1997), the Illinois Supreme Court held that the use of an out-of-court statement by a co-conspirator was acceptable under the confrontation clause, since it fit under the co-conspirator exception to the hearsay rule.  The State urges that all of Mr. Page's statements fall under the co-conspirator exception as in 
Thomas
.  But, once again, while Mr. Page's statements prior to the fire were admissible, the subsequent admission-confession was not.  Under certain circumstances, statements made after the accomplishment of the crime that is the basis of a conspiracy are admissible under the co-conspirator exception.  "[T]he course of a conspiracy includes subsequent attempts at concealment of the crime where sufficiently proximate in time to the offense. [Citations.]"  
Thomas
, 178 Ill. 2d at 238, 687 N.E.2d at 902.  However, Mr. Page's statements that he committed the crime, that they probably did not think he was going to go through with it, that it was the easiest $200 (or $1,000) he had ever made, and that Mr. Brent was a coward for not helping can hardly be characterized as an attempt at concealment.  On the contrary, Mr. Page was bragging about having committed the crime.

Accordingly, admission of Mr. Page's admission-confessions that were reported in Mr. Brent's and Ms. Ward's written statements was in derogation of the defendant's rights under the confrontation clause.  

IV

Under the circumstances of this case, the trial court's errors were harmless beyond a reasonable doubt and, thus, the defendant's conviction need not be reversed.  
Chapman v. California
, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967); 
Saunders
, 220 Ill. App. 3d at 659, 580 N.E.2d at 1255.  The only evidence that the trial court erroneously admitted as substantive evidence was the evidence of Mr. Page's admission-confessions that was contained in the written statements of Ms. Ward and Mr. Brent.  Substantially the same admission-confessions contained in Ms. Ward's grand jury testimony were legitimately admitted under the Act.  Moreover, the trier of fact still could have heard the testimony in question for impeachment purposes.  The improperly admitted comments constituted only a small portion of the overwhelming evidence of the defendant's guilt.  Under these circumstances, reversal is not mandated. 
Saunders
, 220 Ill. App. 3d at 659, 580 N.E.2d at 1255.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.