No. 3-09-0189

Filed April 21, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the Circuit Court
                                    )     of the Twelfth Judicial Circuit,
                                    )     Will County Illinois,
     Plaintiff-Appellee, )
                                    )
     v. )  No. 07-CF-1071
                                    )
DAVID MARTIN, )     Honorable
                                    )     Richard Schoenstedt,
     Defendant-Appellant. )     Judge, Presiding.

Modified Upon Denial of Petition for Rehearing
JUSTICE McDADE delivered the opinion of the court:

The State charged defendant, David Martin, with attempt (residential arson) and reckless conduct. Following a bench trial, the circuit court of Will County found defendant not guilty of attempt (residential arson) and guilty of reckless conduct. The trial court denied defendant's motions to reconsider, for judgment notwithstanding the verdict, and for a new trial. For the reasons that follow, we affirm.

BACKGROUND

The reckless conduct charge alleged that defendant, acting in a reckless manner, knowingly removed end caps to natural gas lines in the dwelling place of Christopher Campbell in such a manner to endanger the bodily safety of Christopher Campbell.

1

Campbell testified at defendant's trial that he lived in an apartment above a pizza restaurant and that defendant was his landlord. On the morning in question Campbell's roommate woke him at approximately 6:30 a.m. Campbell smelled natural gas. He went to a set of two gas meters on the west side of the building and turned off the valve he thought controlled the gas for the restaurant. Campbell returned to bed. He woke several hours later and still smelled natural gas. He returned to the gas meters and turned off the second gas valve.

Sometime later that morning, Campbell knocked on the door to the restaurant. In response he heard a voice he recognized as defendant's voice. Campbell left the apartment and returned between a half-hour and two hours later. When he returned, he met an employee, Mitchell, and they entered the restaurant because Campbell believed that the smell of natural gas indicated that "something was disconnected." Campbell went to the rear of the restaurant where the furnace and water heater are located. He testified that, prior to entering with Mitchell, he had not been in the restaurant either the night before or in the morning of the day question. He also had not seen anyone else in the restaurant and did not actually see defendant there at all that day. He discovered gas pipes disconnected from the furnace and water heater. Specifically, he saw what he believed to be three-quarter-inch gas pipe for the furnace and water heater. He looked for where the pipe appeared to connect and he reconnected them using his own tools. Campbell then turned the gas back on and relit the furnace and heater.

Nicholas Martin, defendant's son, testified that his father owned the pizza restaurant in Joliet. In the morning of the day in question he and his sister picked their father up from the restaurant. Nicholas testified that when he arrived at the restaurant, he found his father sleeping inside. He drove his father to the father's home in New Lenox. While returning to Joliet,

2

Nicholas stopped at a gas station and spoke to a police officer. He told the officer that his father was attempting to commit arson at the restaurant whereupon the officer instructed Nicholas to dial 9-1-1. Nicholas testified that he lied to the officer. Nicholas went to the restaurant and spoke to police. He later went to the Joliet police department and gave police a videotaped statement.

The trial court ruled that portions of the statement were inadmissible and that portions were admissible into evidence. In his videotaped statement, Nicholas told police that he and his sister went to pick up their father from the restaurant. Nicholas found his father to be intoxicated. He had to help his father to the car and lay him in the back seat. On the videotape Nicholas states that when they arrived at his father's home, Nicholas had to help his father out of the car. He also states that this father told him and his sister not to return to the restaurant because "it was going to go ka-boom." Nicholas stated to police that he asked his father about the people in the building, to which his father replied that he would get rid of them, too. When police asked Nicholas to explain what his father meant, he responded: "I can't remember directly but because he must have because [*sic*] I knew it was involved with gas lines, so I don't think that I inferred that, but somehow I knew going there that it was something to do with gas." In the statement, Nicholas told police that when he left his father in New Lenox, Nicholas went to a friend's house for advice.

At trial, Nicholas testified that when he picked his father up it was the first time he had been to the restaurant that day. After he dropped his father off at home, he allegedly went to his friend's house, where she helped him fabricate the story he later gave police. He then returned to the restaurant and, at some point, called police and told them that his father planned to commit

3

arson at the restaurant. Nicholas's friend testified at trial that Nicholas contacted her the day before she testified and asked her to testify that he told her he made up the story about arson to get back at his father.

Nicholas also testified at trial that although he recalled giving the statement, and that he lied, he did not recall specifically telling police that he had difficulty waking his father, that he had to help his father to the car, that his father appeared to be intoxicated, or that he had any conversation with his father that day. He did not recall telling police that he asked about the tenants or that his father told him that he would get rid of the people in the building. Nor did Nicholas recall telling police that anything "involved the gas lines."

Officer John Williams of the Joliet police department testified that he responded to the restaurant based on a report of a building filling with natural gas. He spoke to Nicholas at the restaurant. When asked at trial whether Nicholas told him that Nicholas's father planned to commit arson, Williams responded "not in those words." Williams later arrested defendant. Detective Tim Powers spoke to Campbell. Campbell showed Powers where he had found four end caps lying on the ground near the furnace and water heater. Another officer testified that defendant appeared intoxicated at the jail.

Captain Thomas Douglas with the Joliet fire department testified that he responded to the restaurant on the day in question. He turned off the gas to the oven and ventilated the building, but he did not inspect the water heater.

Defendant moved for a directed verdict and the trial court denied the motion. Following closing arguments, the trial court found that Campbell had turned off both gas lines and later went to the area of the furnace and water heater, where he found end caps lying on the floor.

4

The court found that Campbell replaced the end caps and pipes. The court found that the end caps were removed intentionally and that natural gas was escaping into the building and created a dangerous situation. It based its finding in part on its own experience and observation that, because Campbell was able to simply screw the end caps back on, the end caps, "weren't broken off, rusted off, cut off, or whatever." The court concluded that defendant removed the end caps endangering the bodily safety of Christopher Campbell. The court ruled that the State failed to prove defendant committed attempt (residential arson) but did prove defendant guilty of reckless conduct beyond a reasonable doubt. This appeal followed.

## ANALYSIS

Defendant argues that the trial court erred in admitting Nicholas's statement, recorded in the videotaped interview with police, as substantive evidence pursuant to section 115-10.1(c)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1(c)(2) (West 2006)). Section 115-10.1(c)(2) reads, in pertinent part, as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement–

\*\*\*

(2) narrates, describes, or explains an event or

5

condition of which the witness had personal knowledge, and

* * *

(c) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein."  725 ILCS 5/115-10.1 (West 2006).

At trial, Nicholas testified that he did not recall telling police that on the day in question defendant appeared intoxicated, that defendant mentioned getting rid of the tenants in the building, or having a conversation with defendant at all.  The State argues that Nicholas's statement is admissible as a prior inconsistent statement because (a) the earlier statement is inconsistent with his trial testimony, and (b) the statement satisfies the personal knowledge requirement.  The State asserts that Nicholas's videotaped statement is inconsistent with his trial testimony because (i) he testified at trial that his prior statement was a lie and (ii) he claimed a lack of memory as to the details of the prior statement.  The State contends that defendant's statement about the tenants and that the building was going to "go ka-boom" is not a confession to reckless conduct or arson but is merely a statement of defendant's intentions.

"Where a witness claims that he cannot recall a matter at trial, a former affirmation of it

6

should be admitted as a contradiction." *People v. Leonard*, 391 Ill. App. 3d 926, 933, 911 N.E.2d 403, 411 (2009), citing *People v. Flores,* 128 Ill. 2d 66, 87, 538 N.E.2d 481, 488 (1989). In this case, defendant argues that the trial court erred in admitting Nicholas's statement to police because the record does not contain evidence that Nicholas observed defendant or anyone else remove any end caps from any gas lines and, consequently, the statement does not "narrate[], describe[], or explain[] an event *** of which [Nicholas] had personal knowledge."

We review a trial judge's decision to admit or exclude hearsay statements under an abuse-of-discretion standard. "A court abuses its discretion when its decision is clearly against logic, when it acts arbitrarily, without employing conscientious judgment, or when in view of all the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *People v. Gray*, 378 Ill. App. 3d 701, 706, 883 N.E.2d 546, 551 (2008).

The statements at issue narrate, describe, or explain events or conditions of which Nicholas had personal knowledge. The statements at issue involve statements that Nicholas made regarding comments by a third party. Under section 115-10.1(c)(2) the determination of whether a prior inconsistent statement concerning a third party's comment satisfies the personal knowledge requirement turns on whether the witness is passing along a comment that substantively narrates or describes an event (asserted for the truth that the event occurred) or one that simply relays a comment that does not contain such substantive information (not asserted for the truth of the event). The former is the "type of *** 'double hearsay' statement, typified by the admission-confession of the criminal defendant *** that has most concerned the judicial system, for it raises the greatest danger of misapplication by the jury and the greatest risk of total

fabrication by the witness." *People v. Wilson*, 302 Ill. App. 3d 499, 509, 706 N.E.2d 1026, 1032-33 (1998).

Stated differently, if the witness's prior inconsistent statement consists of what the witness heard about an event, the prior inconsistent statement is inadmissible under section 115-10.1. If the prior inconsistent statement consists of what the witness heard, and if what the witness heard does not in turn narrate or describe an event, the prior inconsistent statement satisfies the personal knowledge requirement of section 115-10.1(c)(2). By contrast, the latter type of statement is "not an account of an event outside the personal knowledge of the witnesses and, therefore, [is] admissible." *Wilson*, 302 Ill. App. 3d at 509, 706 N.E.2d at 1033.

The court's judgment in *People v. Saunders*, 220 Ill. App. 3d 647, 658, 580 N.E.2d 1246, 1254 (1991), illustrates the distinction. The *Saunders* court distinguished between the witness's prior inconsistent statements as (a) regarding comments he had personally heard and (b) comments he personally heard but which regarded events the witness learned about only through the comments the witness heard. *Saunders*, 220 Ill. App. 3d at 658, 580 N.E.2d at 1254. One statement by the witness was that the defendant told the witness he was going to "get" the victim of a homicide and asked the witness whether he wanted to accompany him. The court ruled that the witness's statement of what the defendant personally said to the witness was admissible. Another statement by the witness was that the defendant later told the witness that he "got" the victim. The court found that statement was a statement about an event and that, because the witness did not have personal knowledge of the event, the trial court erred in admitting it. *Saunders*, 220 Ill. App. 3d at 658, 580 N.E.2d at 1254.

In this case, Nicholas's prior inconsistent statement contains no information about an

8

event. The prior inconsistent statement at issue in this case relays only what defendant personally told the witness: do not return to the building because it is going to go "ka-boom." Based on defendant's statement, the trier of fact could, and likely did, *infer* "that defendant had already taken action to make the building go 'ka-boom' and to 'get rid' of the tenants." Slip dissent at 1. The key, however, to our decision, is that Nicholas's statement, on its face, does not relay a comment by defendant that he did in fact remove any gas caps or did anything else that amounts to the *actus reus* of the offenses charged. See also *People v. Bartall*, 98 Ill. 2d 294, 319, 456 N.E.2d 59, 71 (1983), quoting Fed. R. Evid. 803(3) ("defining exception to hearsay rule as including '[a] statement of the declarant's then existing state of mind *** (such as intent, plan, motive, design ***') "); *People v. Hansen*, 327 Ill. App. 3d 1012, 1023, 765 N.E.2d 1033, 1043 (2002) ("under Illinois law, the declarant's statements of intent are admissible *** to establish the declarant's intent *and* that the declarant acted in conformity with that stated intent" (emphasis added)).

The statement regarding the tenants, that defendant would "get rid of them," is, therefore, more analogous to the defendant's statement in *Saunders* that he was going to "get" the victim than the defendant's statement in *Saunders* that he "got" the victim. The remainder of Nicholas's statement concerns his personal observations of defendant and his own inferences as to the meaning of comments defendant made directly to him. The prior inconsistent statement satisfies the personal knowledge requirement of section 115-10.1(c)(2). Accordingly, the circuit court of Will County's order admitting Nicholas's videotaped statement to police into evidence is affirmed.

Next, defendant argues that the State failed to prove him guilty beyond a reasonable

9

doubt because the evidence fails to establish that defendant performed any act endangering the safety of anyone.

> "When a court reviews the sufficiency of the evidence, the relevant question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) [Citations.]" *People v. Jackson*, 232 Ill. 2d 246, 280, 903 N.E.2d 388, 406-07 (2009).

Defendant argues that the State failed to produce evidence to corroborate an inference that defendant committed any relevant acts. Defendant also argues that the State failed to prove that any gas on the premises came from the end caps defendant allegedly removed. He notes that the fire department initially turned off the oven in the restaurant as the possible source of gas. Defendant argues that the evidence established no more than that gas was being emitted in the air. The evidence fails to establish the source of the gas.

> "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he or she performs recklessly the acts that cause the harm or endanger safety, whether they otherwise are lawful or unlawful." 720 ILCS 5/12-5(a) (West 2006).

> "A person *** acts recklessly[] when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining

10

the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2006).

The statute defining the offense describes the result of the conduct in question as a result which "endangers the bodily safety of an individual." Thus, to prove defendant's guilt beyond a reasonable doubt, the State had to prove that (a) defendant (b) removed the natural gas lines on or about the date in question, (c) with a conscious disregard for a risk that doing so would endanger Campbell's bodily safety; in this case by resulting in an accumulation of natural gas in the building.

"When assessing whether, taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt, the reviewing court should, first, determine the ultimate conclusions of fact upon which a finding of guilt must be based. These conclusions, of course, must comport with the elements of the offense. Next, if the conviction is not based on direct evidence, the court must identify the inferential steps the trier of fact must have found to reach its ultimate conclusion. Finally, and most importantly, the reviewing court must identify facts of record, and not suppositions, upon which each inference may reasonably be based." *People v. Turner*, 375 Ill. App. 3d 1101, 1114, 875 N.E.2d 175, 188-89 (2007).

11

First, the trial court, as trier of fact, could reasonably infer that the gas lines became disconnected by an intentional act. The court admitted that it inferred that someone intentionally removed the gas lines based on the fact that Campbell was able to reconnect them: a *fact* which itself only *implied* that the lines had not broken or rusted off. "[T]riers of fact are *** free to draw reasonable inferences from common experience (see, *e.g., People v. Lambrecht,* 231 Ill. App. 3d 426, 439, 595 N.E.2d 1358, 1367 (1992) ('the jury, utilizing its common experience and knowledge, could draw its own inferences and conclusions') )." *Turner*, 375 Ill. App. 3d 1101, 1114-15, 875 N.E.2d 175, 188-89 (McDade, J., dissenting).

Defendant points to nothing unreasonable about the court's inference. Although it may also be "not unreasonable" to infer that the pipes simply fell off, that is not the question this court asks to determine whether we may reverse defendant's conviction. "The inference to be drawn need not be the only conclusion logically to be drawn; it suffices that the suggested inference may reasonably be drawn." (Emphases omitted.) *People v. Ehlert*, 211 Ill. 2d 192, 244-45, 811 N.E.2d 620, 649 (2004) (Thomas, J., dissenting), quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.1, at 141-42 (7th ed.1999).

Similarly, then, another reasonable inference is that the end caps and gas lines became disconnected on the day in question. Campbell testified that he could detect the odor of natural gas accumulating in the building. He smelled natural gas after his roommate woke him. Campbell also testified that he had to turn the gas mains to the building off. Those facts give rise to the reasonable inference that there were no gas leaks before the day in question, when Campbell discovered the disassembled end caps and gas lines, which Campbell or his roommates would have detected sooner.

12

The facts also support a reasonable inference that *defendant* disconnected the end caps and gas lines. As previously discussed, the facts support an inference that the gas lines became disconnected on the morning in question. Independent facts support an inference that defendant was in the restaurant within that time frame. Campbell testified to the fact of hearing defendant's voice inside the restaurant on the morning in question. The facts point to a conclusion that *someone* was present because the facts imply that someone intentionally removed the gas lines and Campbell heard a voice inside; but there are no facts from which to reasonably infer anyone else's presence in the restaurant, other than defendant's, within the time the gas lines became disconnected.

The State also met its burden to prove that the disconnected gas lines in question caused the accumulation of gas in the building without direct evidence that the gas in the building emanated from the disconnected water heater and furnace. Defendant is correct that no direct evidence establishes the source of the natural gas. Therefore, the trier of fact had no choice but to infer the source of the gas. However, "[a] conviction can be sustained upon circumstantial evidence as well as upon direct, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it." *People v. Patterson*, 217 Ill. 2d 407, 435, 841 N.E.2d 889, 905 (2005).

> "Circumstantial evidence is proof of certain facts from which a
> jury may *infer* other connected facts that reasonably follow
> according to the common experience of mankind." *Ehlert*, 211 Ill.
> 2d at 244, 811 N.E.2d at 649 (Thomas, J., dissenting).

The trier of fact could reasonably infer that the disconnected gas lines Campbell

13

discovered on the day in question caused the accumulation of natural gas in the building on that same day. Campbell had not detected gas before. Although the fire department disconnected the oven as a precautionary measure, no evidence established the oven as the source of the gas. No dispute exists that the building contained an unnatural accumulation of natural gas. The disconnected gas lines in question are a reasonable inference of the source of the gas.

Finally, the evidence supports a reasonable inference that defendant knew that the disconnected gas lines carried a risk of causing an unsafe accumulation of natural gas in the building, endangering Campbell's safety. The evidence established that defendant warned his own children not to return to the building because it was going to go "ka-boom." The trier of fact could also believe Nicholas's statement that defendant told him he would "take care of" the tenants in the building. Defendant's statements evidence defendant's knowledge that disconnected gas lines carry a substantial risk of endangering the bodily safety of another.

The totality of the evidence supports a reasonable inference that (a) defendant, (b) removed the end caps to the gas lines, and (c) knew that the disconnected gas lines carried a risk of causing an accumulation of natural gas in the building endangering Campbell's safety. The evidence supports a reasonable inference that the gas lines did not become disconnected as the result of accident and that the disconnected lines--discovered for the first time on the day of the incident--caused the accumulation of gas endangering the bodily safety of an individual. The State met its burden to prove defendant guilty of reckless conduct beyond a reasonable doubt.

CONCLUSION

The judgment of the circuit court of Will County is affirmed.

Affirmed.

14

WRIGHT J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I would hold that it was error for the trial court to admit the videotape of Nicholas's statement to the police. As the majority correctly observes, the question at issue is whether defendant's statement telling Nicholas not to go into the building because it was going to go "ka-boom" was an admission-confession or a statement of his intentions. Section 115--10.1(c)(2) of the Code of Criminal Procedure (725 ILCS 5/115--10.1(c)(2) (West 2006)) permits hearsay concerning a defendant's state of mind as to his intentions but does not permit hearsay concerning an admission-confession to be admitted as substantive evidence. People v. Wilson, 302 Ill. App. 3d 499, 509 (1998). The distinction between a statement regarding the defendant's state of mind and an admission-confession is illustrated in People v. Saunders, 220 Ill. App. 3d 647, 658-59 (1991). In Saunders, the court held that a statement by the defendant that he was going to "get" the victim was admissible while a later statement that he "got" the victim was inadmissible. Saunders, 220 Ill. App. 3d at 658-59.

Here, the majority finds that defendant's statement to Nicholas that the building was going to go "ka-boom" and that defendant would "get rid of them" were analogous to the defendant's statement in Saunders that he was going to "get" the victim. I do not agree. Defendant's statements to Nicholas in the instant matter are far more analogous to the defendant's statement in Saunders that he "got" the victim. Since the statements allegedly made by defendant to Nicholas were offered to establish that defendant had already taken action to make the building go "ka-boom" and to "get rid" of the tenants, they were clearly offered as confession-admissions, not merely to establish defendant's state of mind regarding his intention

15

to set the building on fire.  As such, I would find that the statements were inadmissible hearsay and would hold that it was error to admit those statements.  I would, therefore, reverse defendant's conviction and remand for a new trial at which the videotape of Nicholas's statement to the police would not be admitted.

For this reason, I respectfully dissent.